IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MIRIAM MINNER ELLEDGE,<br><br>   Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>   Defendant. | CASE NO. 1:23-cv-1979<br><br>DISTRICT JUDGE<br>SOLOMON OLIVER, JR<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

Plaintiff Miriam Minner Elledge filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying disability insurance benefits. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural history**

In March 2021, Elledge filed an application for disability insurance benefits alleging a disability onset date of May 1, 2020,[1] and claiming she was disabled due to psoriatic arthritis, asthma, attention-deficit hyperactivity

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

disorder (ADHD), autism spectrum, generalized anxiety disorder, depression, and post-traumatic stress disorder (PTSD). Tr. 10, 249, 273. The Social Security Administration denied Elledge's application and her motion for reconsideration. Tr. 89, 108. Elledge then requested a hearing before an Administrative Law Judge (ALJ). Tr. 132.

In June and July 2022, an ALJ held administrative hearings. Elledge and a vocational expert testified. Tr. 33–92. In August 2022, the ALJ issued a written decision finding that Elledge was not disabled. Tr. 14–28. The ALJ's decision became final on August 9, 2023, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Elledge filed this action on October 10, 2023. Doc. 1. She asserts the following assignments of error:

> 1. The ALJ committed harmful error when her RFC failed to include limitations related to Plaintiff's documented psychological impairments.
>
> 2. The ALJ committed harmful error when her RFC failed to include limitations related to Plaintiff's psoriatic arthritis, swelling, and pain.
>
> 3. The ALJ erred when she improperly assessed the opinions of the treating and reviewing sources and failed to support her conclusions with substantial evidence.
>
> 4. The ALJ committed harmful error at Step Four of the Sequential Evaluation when she erroneously found that Plaintiff could perform her past relevant work.

Doc. 7, at 1.

**Evidence**

*Personal and vocational evidence*

Elledge was born in 1967 and was 50 years old on her alleged disability onset date. Tr. 210. She completed one year of college. Tr. 250. She used to work in retail and sales and last worked in May 2020. Tr. 250.

*Relevant medical evidence*

*Physical impairments.* In July 2020, Elledge followed up with rheumatologist Marie Kuchynski, M.D., for polyarticular psoriatic arthritis. Tr. 414–18. Elledge reported joint pain and swelling. Tr. 415. Her pain medication helped her symptoms. Tr. 415. Dr. Kuchynski's exam of Elledge's "joints, bones, and muscles" was "abnormal" due to finger and hand swelling and was otherwise unremarkable. Tr. 418. Dr. Kuchynski ordered lab tests and hand x-rays and adjusted Elledge's medications. Tr. 414. Lab results showed positive inflammatory markers. *See, e.g.*, Tr. 386.

Elledge saw Dr. Kuchynski about every three months. *See, e.g.*, Tr. 390. She reported symptoms of joint pain, joint swelling, tenderness, and restricted movement. *See, e.g.*, Tr. 390, 587. At her October 2020 exam, Elledge reported joint pain, joint swelling, tenderness, and restricted movement. Tr. 406. She said that she had difficulty opening boxes, worsening brain fog, and trouble concentrating. Tr. 406. Dr. Kuchynski's exam findings showed that Elledge was alert and oriented. Tr. 410. She had intact insight and judgment, normal memory, and a depressed mood. Tr. 410. She had hand swelling and no other

3

bone, joint, or muscle abnormalities. Tr. 410. She had a normal range of motion in all of her extremities, normal stability, and normal muscle strength and tone. Tr. 410.

At other visits, Dr. Kuchynski's exam of Elledge's joints, bones, and muscles showed hand swelling and no other abnormalities. *See, e.g.*, Tr. 393, 466. Dr. Kuchynski commented that Elledge's hand swelling was "improved" in April, August, and December 2021 and in April 2022. Tr. 393, 466, 581, 590. Elledge had a normal range of motion in all of her extremities, normal stability, and normal muscle strength and tone. Tr. 393, 399, 466, 581, 590. Elledge's medication helped her symptoms. *See, e.g.*, Tr. 463, 587.

In December 2021, Dr. Kuchnyski completed a medical source statement on Elledge's behalf. Tr. 503–06. She opined, in relevant part, that in an eight-hour workday Elledge could use her hands and fingers for 20 percent of the time to grasp, turn, twist, and manipulate objects. Tr. 505.

*Mental impairments.* In November 2020, Elledge resumed counseling sessions with licensed social worker Pamela Jaras. Tr. 348–52. Elledge reported severe anxiety, panic, intrusive memories, insomnia, an inability to focus, restlessness, and easy distractibility. Tr. 348. She was not taking any psychotropic medications. Tr. 348. Jaras's exam findings showed that Elledge was fully oriented with normal cognitive functioning and a normal appearance. Tr. 348. She had an anxious mood, flighty thoughts, and fast speech. Tr. 348.

4

In March 2021, Elledge saw nurse practitioner Rachel Krakora for a virtual initial psychiatry evaluation. Tr. 369–74. Elledge reported symptoms of crying spells, poor concentration, flashbacks, nightmares, and excessive worry. Tr. 370. She reported panic attacks but said that it "ha[d] been awhile." Tr. 370. She had "hot flashing," disassociation, derealization, restlessness, and chest pressure. Tr. 370. Elledge described the following ADHD symptoms: inattentiveness, distractibility, hyperactivity, rambling and disorganized speech, being hyper-talkative, and not being able to complete tasks. Tr. 370. Krakora's exam findings showed that Elledge had a depressed and distressed mood and trouble concentrating. Tr. 373. Her "thought form" was flighty and circumstantial and she expressed worry. Tr. 373. Her behavior was appropriate, inattentive, hyperactive, distractible, and fidgety. Tr. 373. Elledge was fully oriented and had normal speech, intact associations, and coherent thought content. Tr. 373. She had an appropriate and adequate fund of knowledge, intact memory and cognition, and appropriate insight and judgment. Tr. 373. Krakora diagnosed Elledge with major depressive disorder, generalized anxiety disorder, and PTSD. Tr. 373. She started Elledge on Prozac. Tr. 373.

In July 2021, Elledge told Krakora that she had "significant improvement with her symptoms." Tr. 472. It was easier for Elledge to perform tasks and recall things. Tr. 472. Her anxiety had improved except when her medication wore off. Tr. 472. In September, Elledge reported "feeling good." Tr.

492. She still had some brain fog, which she attributed to the then-recent deaths of her mother and father-in-law from Covid. Tr. 492–93. Elledge had contracted Covid and was off her medication while she recovered. Tr. 480, 492.

At a follow-up appointment with Krakora in March 2022, Elledge had normal or unremarkable exam findings. Tr. 548. She was doing well and Krakora assessed her as "improved." Tr. 544. Krakora continued Elledge's Prozac and Adderall and started Elledge on Gabapentin. Tr. 544, 549. Four days later, Krakora completed a check-box mental impairment questionnaire on Elledge's behalf and opined that Elledge was "seriously limited" or "unable to meet competitive standards" in a number of work-related activities. Tr. 555–56.

*State agency opinions*[2]

In November 2021, Maria Congbalay, M.D., assessed Elledge's physical residual functional capacity[3] (RFC) and found that Elledge could perform light work with postural and environmental limitations. Tr. 102–03.

---

[2]     When a claimant applies for disability benefits, the State Agency creates a record. The record includes the claimant's medical evidence. A State Agency disability examiner and a State Agency physician or psychologist review the claimant's record and determine whether and to what extent the claimant's condition affects his or her ability to work. If the State Agency denies the claimant's application, the claimant can ask for reconsideration. On reconsideration, the State Agency updates the record and a second disability examiner and doctor review the file and make a new determination. *See, e.g.*, 20 C.F.R. § 404.1615.

[3]     An RFC is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's

In May 2021, Robyn Murry-Huffman, Psy.D., opined that Elledge's impairments did not satisfy a listed impairment.[4] Tr. 93. When reaching this conclusion, Dr. Murry-Huffman found that Elledge had "moderate" limitations in the four "paragraph B" criteria.[5] As for Elledge's mental RFC, Dr. Murry-Huffman found that Elledge could complete two- to three-step tasks that did not require prolonged periods of focus and concentration and were not driven by production demands. Tr. 94. She could have superficial interaction with others in the workplace and could adjust to minor and infrequent task changes. Tr. 95–96. In October 2021, Courtney Zeune, Psy.D., affirmed Dr. Murry-Huffman's findings. Tr. 101, 103–06.

---

"description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[4]     The "listings" are found at 20 C.F.R Part 404, Subpart P, App. 1. They are a catalog of disabling impairments organized by "body systems." Generally, each body system section has an Introduction, which contains information relevant to that system, and a Category of Impairments, which contains each numbered listing. Each listing describes the objective medical and other findings needed to satisfy the criteria of that listing. *Id*.; 20 C.F.R. § 404.1525.

[5]     The listings considered by the state agency reviewers and the ALJ, Tr. 15, 93, contain three paragraphs—A, B, and C. To satisfy a listing, a claimant must satisfy the requirements in paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00A2. To satisfy the paragraph B criteria, the claimant must have an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. *Id*. at 12.00A2b.

*Hearing testimony*

Elledge, who was represented by counsel, testified at the telephonic administrative hearings. At the June 2022 hearing, she stated that she resumed counseling in 2020 due to significant anxiety caused by the coronavirus pandemic and the need to process family trauma. Tr. 80–81. She said that on her alleged disability onset date, May 1, 2020, she took a medical leave of absence from her job with an insurance company because the unpredictable nature of her "flares" prevented her from maintaining a regular work-from-home schedule. Tr. 81–82. Her rheumatologist prescribed medications, but the medications didn't improve Elledge's symptoms to the extent that she could return to her job full-time. Tr. 82. She had problems using her keyboard and sitting and standing for long periods of time. Tr. 83.

At the July 2022 hearing, Elledge said that she stopped working because the arthritis in her hands, wrists, and shoulders caused her to experience excruciating pain after typing for more than a few minutes. Tr. 39. She had to take more breaks than her employer allowed. Tr. 39. Elledge estimated that she experienced mild flare-ups of her autoimmune arthritis on a weekly basis and more severe flares "probably a weeklong to months." Tr. 39–40. She had daily pain in her hands and wrists and daily swelling in every joint below her neck. Tr. 40–41. She also said that there were days when she could not leave her house because of her mental health symptoms. Tr. 48.

The ALJ discussed with the vocational expert Elledge's past work as a telemarketer-and-order clerk, sales agent, salesperson, and area supervisor. Tr. 86–87. The ALJ asked the vocational expert to determine whether a hypothetical individual with the same age, education, and work experience as Elledge could perform Elledge's past work if the individual had the limitations assessed in the ALJ's RFC determination, described below. Tr. 52–56. The vocational expert answered that such an individual could perform Elledge's past jobs as a salesperson and a telemarketer-and-order clerk. Tr. 56–57.

**The ALJ's Decision**

The ALJ made the following findings of fact and conclusions of law:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.
>
> 2.  The claimant has not engaged in substantial gainful activity since May 1, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.  The claimant had the following severe impairments: psoriatic arthritis, obesity, major depressive disorder, generalized anxiety disorder, posttraumatic stress disorder (PTSD), mild autism spectrum disorder, and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the

9

residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; avoid concentrated exposure to respiratory irritants and hazards; can frequently reach, handle, finger, and feel; can interact with others, but no arbitration or conflict resolution.

6. The claimant is capable of performing past relevant work as a salesperson cosmetics and toiletries, and a composite job, consisting of telemarketer and order clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 1, 2020, through the date of this decision (20 CFR 404.1520(f)).

Tr. 12–27.

### Standard for Disability

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.     Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.     Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

3.     Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4.     What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5.     Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920. *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

11

**Standard of review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). The substantial evidence standard "is not high." *Id*. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 139 S. Ct. at 1152.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v.*

*Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

*1.     The ALJ did not err when she evaluated Elledge's psychological impairments.*

In her first assignment of error, Elledge argues that the ALJ erred when "her RFC failed to include limitations related to plaintiff's documented psychological impairments." Doc. 7, at 8. Elledge then cites, discusses, and challenges the ALJ's step three findings. *Id.* at 8–9 (citing Tr. 15–16).

Elledge's counsel has been warned to refrain from doing what she has done here—combining together disparate challenges and arguments of the sequential disability evaluation. *See, e.g., Zinn v. Comm'r of Soc. Sec.*, No. 1:23-cv-30, 2023 WL 6277864, at *11, n.11 (N.D. Ohio Sept. 11, 2023), *report and recommendation adopted*, 2023 WL 6276584 (N.D. Ohio Sept. 26, 2023); *Gottron v. Comm'r of Soc. Sec.*, No. 3:22-cv-123, 2022 WL 17717498, at *7–8, n.15, 17 (N.D. Ohio Oct. 5, 2022) (collecting cases), *report and recommendation adopted*, 2023 WL 4285132 (N.D. Ohio June 30, 2023). And "[c]ounsel has been warned that if she continues to present arguments in this manner, the Court may deem an argument forfeited or impose other appropriate sanctions." *Zinn v. Comm'r of Soc. Sec.*, 2023 WL 6277864, at *11, n.11. Because Elledge hasn't properly presented her step three argument, it is forfeited.

Elledge's step three argument is also forfeited because Elledge hasn't presented an argument that the Court could address. Elledge states that the

13

ALJ "incorrectly analyzed the evidence" and failed to "cite to specific evidence." Doc. 7, at 9 (citing Tr. 15–16). But the ALJ cited "specific evidence" in support of her step three findings, Tr. 15–16, and Elledge hasn't identified what part of the ALJ's characterization of this evidence she believes is inaccurate. So her step three argument is also forfeited for this reason. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

To the extent that Elledge is attempting to make an argument that the ALJ erred when she failed to include in the RFC her step three paragraph B findings, any such argument would fail. Elledge hasn't shown that the ALJ was required to include her no-more-than mild paragraph B findings in the RFC or that the ALJ's RFC doesn't sufficiently account for the moderate paragraph B finding.[6]

Next, Elledge contends that when the ALJ evaluated Elledge's RFC, she "focused on the benign or mildly adverse findings, rather than the treatment

---

[6]    An ALJ is not required to include in the RFC the ALJ's "none" or "mild" paragraph B findings. *See, e.g., Zingale v. Kijakazi*, No. 1:20-cv-2197, 2022 WL 824148, at *12 (N.D. Ohio Mar. 18, 2022) (collecting cases). Here, the ALJ found that Elledge had "none" or "mild" limitations in three areas of functioning and a "moderate" limitation in the fourth area of functioning, "interacting with others." Tr. 15–16. The ALJ's RFC accounts for the moderate finding by limiting Elledge to "no arbitration or conflict resolution." Tr. 17, 21.

records" Elledge recites in her brief "and as interpreted by the State Agency reviewing psychologists." Doc. 7, at 12. To the extent that Elledge is referring to the ALJ's evaluation of the opinion evidence, I address her arguments below when I consider her separate assignment of error challenging this same opinion evidence. To the extent that Elledge refers to her various abnormal mental exam findings that providers observed, *id*. at 9–10, the ALJ acknowledged these findings, Tr. 19–20, as Elledge concedes, Doc. 7, at 11–12. The ALJ explained that despite these abnormal exam findings and in light of other normal exam findings, Elledge could perform work with the limitations described in the RFC assessment. Tr. 21. Other than disagreeing with the ALJ's conclusion, which is not grounds for remand, Elledge hasn't identified an error she believes the ALJ made when evaluating this evidence.

Finally, Elledge cites Social Security Ruling 96-8p, which, she emphasizes, says that the ALJ must consider the claimant's severe and non-severe impairments when evaluating the RFC. Doc. 7, at 12. She concludes that the ALJ "failed to evaluate her psychological impairments." *Id*. at 13. This argument is nonsensical because the ALJ didn't find that any of Elledge's psychological impairments were non-severe, Tr. 13, and she considered Elledge's severe psychological impairments when evaluating the RFC, Tr. 13, 17–26.

2.    *The ALJ properly evaluated Elledge's reports of pain and swelling*

Elledge argues that the ALJ failed to account for her reports of "sporadic arthritis, swelling, and pain." Doc. 7, at 13. To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ considers medical evidence, the claimant's statements, other information provided by medical sources, and any other relevant evidence in the record. *See* Soc. Sec. Ruling 16-3p, 2017 WL 5180304, at *4 (Oct. 25, 2017); 20 C.F.R. § 404.1529. Other relevant evidence includes: daily activities; the location, duration, frequency, and intensity of pain or symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication; treatment, other than medication, to relieve pain; any measures used to relieve pain; and "[o]ther factors concerning … functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c). "The ALJ need not analyze all seven factors, but should show that he considered the relevant evidence." *Hatcher v. Berryhill*, No. 1:18-cv-1123, 2019 WL 1382288, at *15 (N.D. Ohio Mar. 27, 2019) (citing *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005)).

Elledge recites evidence in the record and her testimony. Doc. 7, at 13–14. Then she says, "[t]he ALJ failed to comply with caselaw setting forth the standard for determining whether pain is a disabling impairment as a 2-step process." *Id*. at 15. But the ALJ cited and followed the two-step process of determining whether Elledge's arthritis pain, swelling, and other symptoms

16

were disabling. *See* Tr. 17–18, 20, 22, 26. The ALJ detailed Elledge's testimony, reports to providers, objective exam findings, and lab results. Tr. 17–18. The ALJ discussed Elledge's daily activities and treatment, Tr. 21–22, and evaluated the opinion evidence, Tr. 23. So the ALJ complied with Social Security Ruling 16-3p.

Elledge cites her hand pain and swelling and argues that "the ALJ erroneously failed to include any related limitations in [the] RFC." Doc. 7, at 15. The ALJ's decision belies Elledge's assertion. The ALJ expressly limited Elledge to frequent reaching, handling, fingering, and feeling due to her reports of joint pain and swelling in her hands. Tr. 20. Elledge contends that the ALJ "incorrectly failed to include the effects of [her] pain and swelling which would further impact her ability to use her hands on even a frequent basis." Doc. 7, at 15. But Elledge doesn't say what about the ALJ's decision she believes was erroneous. So she hasn't shown that the ALJ erred or that the decision is unsupported by substantial evidence.

3. *Elledge hasn't shown that the ALJ erred when evaluating the opinion evidence*

Elledge argues that the ALJ improperly evaluated the opinions provided by Dr. Kuchynski, Nurse Krakora, and the state agency reviewing physicians. Doc. 7, at 11–12, 16–22.

17

### 3.1 Elledge has forfeited most of her opinion-evidence arguments

In the "Facts" section of her brief, Elledge spends about two pages discussing the medical evidence. Doc. 7, at 2–4. In the "Argument" section of her brief, she relies on evidence that she didn't include in the *Facts* section of her brief, in violation of the Court's Initial Order. *See* Doc. 4, at 3 ("All facts relevant to the legal issues and discussion must be set forth in the *Facts* section."). For instance, in the *Facts* section of her brief, Elledge says that Dr. Kuch[yn]ski completed a Physical Medical Source Statement (Tr. 503–506)" but doesn't cite any of Dr. Kuchynski's findings in that four-page opinion. Doc. 7, at 3. In the *Argument* section of her brief, Elledge recites the findings in Dr. Kuchynski's opinion. *Id.* at 17. She repeats this error when citing Krakora's opinion, *compare id.* at 3, *with id.* at 19, and when citing the state agency reviewers' step three findings, *compare id.* at 3–4, *with id.* at 11.

Elledge's counsel has been previously and repeatedly warned about this practice. *See Ennis-Hastings v. Comm'r of Soc. Sec.*, No. 1:23-cv-228, 2023 WL 7018361, at *8 (N.D. Ohio Sept. 19, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 7282843 (N.D. Ohio Nov. 3, 2023). Because Elledge has failed to comply with the Court's Initial Order to set forth in the *Facts* section of her brief the opinion evidence cited above that serves as the basis for her argument, she has forfeited her argument as to these opinions. *See id.*

### 3.2    Even if the Court considers Elledge's arguments, they fail

Even if the Court were to consider Elledge's forfeited opinion-evidence arguments, the arguments would fail. The ALJ considered, in relevant part, Dr. Kuchynski's opinion that Elledge could only use her hands for 20 percent of the workday. Tr. 24. The ALJ found that this opinion was "inadequately supported as it notes psoriatic arthritis with swelling of the affected joints and psoriasis on examination, but no other clinical abnormalities on physical examination, such as weakness [or] decreased coordination … to support the extreme limitations contained therein." Tr. 24. Elledge argues that this conclusion was incorrect because Dr. Kuchynski had on five separate occasions observed that Elledge had "an abnormal inspection of her joints, bones, and muscles," hand swelling, and "joint pain, joint swelling, tenderness, and restricted movement." Doc. 7, at 18 (citing Tr. 393, 399, 410, 418, 463). But Dr. Kuchynski's indication in some treatment notes that Elledge's joints were "abnormal" was due to hand swelling, *e.g.*, Tr. 393, which the ALJ acknowledged, Tr. 24. And the treatment note that Elledge cites for "joint pain, … tenderness, and restricted movement" shows that Elledge had reported "back pain" and "joint stiffness," Tr. 463, not that Dr. Kuchynski observed Elledge to have pain or stiffness in any of her joints, Tr. 466. So Elledge hasn't shown that the ALJ's finding was inaccurate.

Elledge points out that she had an "elevated SED rate," which indicates inflammatory activity in the body.[7] Doc. 7, at 18. But the fact that Elledge had an elevated SED rate indicating polyarticular psoriatic arthritis, Tr. 388–89, which the ALJ acknowledged, Tr. 22, doesn't show that the ALJ's RFC assessment was improper. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition] … says nothing about the severity of the condition"). And Elledge's challenge to the ALJ's evaluation of Krakora's opinion fails because Elledge only alleges, without showing, that the ALJ "erroneously failed to support her incorrect conclusion and adopt the opined limitations." Doc. 7, at 21.

### 3.3    *The remainder of Elledge's opinion-evidence argument fails*

Elledge's only preserved argument is that the ALJ erred when evaluating the state agency reviewers' RFC opinions. Doc. 7, at 3, 12, 21. The state agency reviewers opined that Elledge could perform two- to three-step tasks "that do not require prolonged periods of focus/concentration and that are not driven by production demands." Tr. 95, 104. They also found that Elledge could have superficial interaction with others. Tr. 95, 104. Elledge argues that the ALJ's rejection of the two- to three-step task limitation was "in error and was not supported by substantial evidence." Doc. 7, at 12.

---

[7]    *See*   https://www.mayoclinic.org/tests-procedures/sed-rate/about/pac-20384797 [https://perma.cc/9M9K-8T9U].

The ALJ discussed the supportability and consistency factors when she discounted the state agency reviewers' opinions. Tr. 23–24; *see* 20 C.F.R. § 404.1520c(b)(2) (an ALJ must explain the "supportability and consistency factors for a medical source's medial opinions"). Elledge hasn't identified what aspect of the ALJ's evaluation was erroneous. She only disagrees with the ALJ's conclusion, Doc. 7, at 22, which is not grounds for remand. She claims that the ALJ "failed to consider" Social Security Ruling 85-16, *Residual Functional Capacity for Mental Impairments*, 1985 WL 56855 (Jan. 1, 1985), Doc. 7, at 11, without identifying the portion of that five-page ruling the ALJ purportedly ignored. And the Court is not in a position to construct an argument on this issue for Elledge. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993) ("judges are not also required to construct a party's legal arguments for" the party); *Patterson v. Stark Cnty. Bd. of Cnty. Commissioners*, No. 18-cv-2542, 2019 WL 2410854, at *2 (N.D. Ohio June 7, 2019) ("It is not the Court's job to … construct arguments for the parties.").

Elledge argues that all of the medical opinions in the record—the "treating and reviewing sources"—were "entitled to controlling weight if well supported and not inconsistent with other substantial evidence." Doc. 7, at 22 (citing *Battaglia v. Comm'r of Soc. Sec.*, No. 1:22-cv-1459, 2023 WL 3900356, at *15 (N.D. Ohio June 8, 2023)). The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by 20 C.F.R. §§ 404.1520c and 416.920c for applications filed on or after March

27, 2017. Elledge filed her disability application in 2021. Tr. 220. The plaintiff in *Battaglia* filed her application on March 13, 2017. 2023 WL 3900356, at *1, 15. That's why the *Battaglia* court applied the treating physician rule, *id*., and why this Court should not.

Finally, Elledge argues that because the ALJ's RFC assessment was faulty, the ALJ's resultant conclusion at step four that Elledge could perform her past work was also erroneous. Doc. 7, at 23–24. Because Elledge has failed to show that the ALJ's RFC is faulty, her related step four argument also fails.

**Conclusion**

For the reasons explained above, I recommend that the Commissioner's decision be affirmed.

Dated: April 9, 2024

 */s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).